**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RENEE GIRON, individually, and on behalf of all others similarly situated, | No. 22-cv-00075 |
| Plaintiff, | |
| v. | Hon. John Z. Lee |
| SUBARU OF AMERICA, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Renee Giron ("Plaintiff"), individually, and on behalf and all others similarly situated, by and through counsel, complains against Defendant Subaru of America, Inc. ("Subaru" or "Defendant") as follows:

**INTRODUCTION**

1.     This action arises from Subaru's design, production, distribution, marketing, and sale of Model Year 2019-2022 Subaru Forester Touring, 2020-2022 Subaru Outback Limited, Touring, Touring XT, and Limited XT, and 2020-22 Subaru Legacy Limited, Limited XT, and Touring XT vehicles (the "Class Vehicles"), all of which are equipped with the DriverFocus Distraction Mitigation System, also called the Driver Monitoring System (the "DriverFocus" or "DMS").[1]

2.     The DMS is a suite of safety features that functions by using a "near-infrared camera" to track the driver's face and eyes to determine if "the driver is not paying attention to the

_____

[1] DriverFocus comes standard on Outback Touring, Touring XT, and Limited XT, Forester Touring, and Legacy Limited XT and Touring XT vehicles, and is an available option on Outback Limited and Legacy Limited vehicles.

forward direction." If the system determines that the driver is not paying attention or is drowsy, it will alert the driver with either a visual warning on the vehicle's display system or audible warnings, or both.

3.      The DMS also features a driver recognition system that "collects and stores data regarding the driver's facial features" in order to recognize up to five registered drivers. Upon recognizing a driver, the DMS can adjust vehicle features—such as the driver's seat position, climate control setting, side mirror position, and center information display settings—to the driver's pre-set preferences.

4.      Both the distraction mitigation and driver recognition features of the DMS scan and utilize the driver's biometric identifiers[2] and/or biometric information[3]—particularly, the person's retina/iris and face geometry—to recognize drivers and determine if the driver is facing forward and focused on the road, or is "distracted or drowsy."

5.      The DMS collects and stores drivers' biometric identifiers and/or biometric information in order to recognize specific individuals. The DMS stores the biometric identifiers and/or biometric information on the same onboard computer that Subaru routinely accesses through its Starlink system, through which Subaru collects and later accesses vehicle and operator data.[4]

6.      However, in collecting and utilizing Plaintiff's and Class members' biometric identifiers and biometric information (and unlike the other data Subaru collects through the Starlink system), Subaru fails to: 1) warn drivers that the DMS captures, collects, and stores their

---

[2] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans, DNA and "face geometry", among others. *See* 740 ILCS 14/10.

[3] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual. *See* 740 ILCS 14/10.

[4] *Subaru Starlink Privacy Policy*, SUBARU (May 1, 2018), available at: https://www.subaru.com/company/starlink-privacy.html (last visited Nov. 24, 2021).

biometric identifiers and/or information; 2) inform drivers of the purpose or length of time that Subaru collects, stores, and uses biometric identifiers and/or information; 3) obtain drivers' written consent to capture their biometric identifiers and/or information; and 4) implement and/or make publicly available a written policy disclosing to drivers Subaru's practices concerning the collection, use, and destruction of their biometric identifiers and/or information in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*

7.     The Illinois General Assembly recognized that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 ILCS 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

8.     In recognition of these concerns over the security of individuals' biometrics, the Illinois General Assembly enacted BIPA, which provides, *inter alia*, that a private entity, like Defendant, may not obtain and/or possess an individual's biometric data unless it:

     a.     Develops and makes available to the public a written policy establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first;

     b.     Informs the subject in writing that a biometric identifier or biometric information is being collected, stored and used and the specific purpose and length of time the biometric identifier or biometric information is being collected, stored, and used; and

     c.     Receives a written release executed by the subject of the biometric identifier or biometric information.

740 ILCS 14/15(a)-(b).

3

9.      Additionally, BIPA prohibits an entity in possession of biometric identifiers or biometric information from 1) selling, leasing, trading, or otherwise profiting from an individuals' biometric identifiers or information, or 2) disclosing, redisclosing, or otherwise disseminating the individual's biometric identifiers and biometric information unless the individual consents to the disclosure or dissemination. 740 ILCS 14/15(c)-(d).

10.     BIPA requires that entities in possession of biometric identifiers and/or biometric information store, protect, and transmit the biometric data using a reasonable standard of care, with at least the same level of protection that it stores, protects, and transmits other confidential and sensitive data. 740 ILCS 14/15(e).

11.     Drivers can deactivate some features of the DMS in order to preclude Subaru from collecting vehicle operators' biometric identifiers and/or biometric information, however, doing so deprives them of the critical safety benefits the DMS provides. Subaru's policies thus leave drivers between a rock and a hard place: forego standard safety features, or entrust their highly-sensitive biometric data to Subaru despite its failure to comply with BIPA.

12.     Accordingly, Plaintiff, individually, and on behalf of all others similarly situated, brings this action to enjoin, and recover damages stemming from, Defendant's BIPA violations.

## **PARTIES**

### *Plaintiff Giron*

13.     Plaintiff Renee Giron is a citizen and resident of Cook County, Illinois, living in Chicago, Illinois.

14.     In or about January 2020, Plaintiff purchased a 2020 Subaru Outback. Plaintiff's vehicle is equipped with the DMS, which scanned, obtained, saved, and used her biometric identifiers and/or biometric information in connection with the driver recognition profiles.

4

Through the DMS, Subaru collected and stored Plaintiff's unique biometric identifiers or biometric information.

15.     Each time Plaintiff started her vehicle's ignition, Subaru captured, collected, obtained, used, and stored biometric scans of Plaintiff's face and facial geometry. Each time that Plaintiff drove her vehicle, Subaru captured, collected, obtained, used, and stored biometric scans of Plaintiff's eyes.

16.     At no point, either upon purchasing the vehicle or at any time thereafter, did Subaru provide a written notice to Plaintiff providing that the vehicle would collect, capture, obtain, or store biometric information and/or biometric identifiers; inform Plaintiff of the purpose or length of time that the vehicle would collect, store, or use biometric information and/or biometric identifiers; or establish a schedule concerning the retention or permanent destruction of biometric information and/or biometric identifiers.

17.     Subaru did not obtain consent from Plaintiff to capture, collect, obtain, use or store her biometric identifiers or biometric information.

18.     Subaru never obtained from Plaintiff a signed written release permitting it to collect, capture, store, or user her biometric identifiers or biometric information.

19.     Plaintiff has suffered and continues to suffer an injury-in-fact based on Subaru's violations of her legal rights. Subaru intentionally interfered with Plaintiff's ability and right to possess and control her own sensitive and immutable biometrics. Subaru had no lawful right to collect, capture, use or store her biometrics without her consent.

20.     Plaintiff also suffered and continues to suffer an informational injury because Subaru failed and continues to fail to provide her with information to which she was entitled by statute. Through BIPA, the Illinois legislature created the right to receive certain information prior

to an entity securing highly personal, private, and proprietary biometrics. Plaintiff was injured by not receiving this extremely critical information.

21.    By letter dated April 27, 2021, Plaintiff's counsel notified Subaru of Plaintiff's intent to commence this action on behalf of herself and the putative Class. When the parties proved unable to resolve this dispute, Plaintiff was left with no choice but to commence this action.

***Defendant Subaru***

22.    Defendant Subaru is a corporation registered to do business in the State of Illinois, but organized under the laws of New Jersey, with its principal place of business at 2235 Route 70, West Cherry Hill, New Jersey 08002.

## JURISDICTION

23.    Plaintiff filed this action in the Circuit Court of Cook County, Illinois, County Department — Chancery Division, on November 29, 2021.

24.    On January 5, 2022, Subaru removed this action to the United States District Court for the Northern District of Illinois, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

25.    This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and Defendant is a citizen of a State different from that of at least one Class member.

26.    This Court has personal jurisdiction over Defendant because it is authorized to and regularly conducts business in Illinois, has purposefully availed itself of the benefits and protections of Illinois by conducting continuously and systematically conducting substantial business in this judicial district, and intentionally and purposefully placing Class Vehicles into the stream of commerce within Illinois.

27.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's and Class members' claims occurred in this District, and 28 U.S.C. §§ 1446(a) and 1453, because this action was removed from the Circuit Court of Cook County, Illinois.

## FACTUAL ALLEGATIONS

### A.     The Biometric Information Privacy Act

28.     The global market for biometric technologies is growing at an exponential rate due to the increasing penetration of biometric-enabled consumer devices such as smartphones, tablets, speakers, and applications among consumers worldwide.

29.     However, despite the growing use of biometrics, "the full ramifications of biometric technology are not fully known" and "an overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information." 740 ILCS 14/5(f).

30.     In addition, in the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b).

31.     As such, in 2008 the Illinois Legislature enacted BIPA to regulate the "collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

32.     Biometric identifiers include "a retina or iris scan . . . or scan of . . . face geometry." 740 ILCS 14/10.

33. Biometric information includes "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual." 740 ILCS 14/10.

34. BIPA requires that any private entity in possession of biometric identifiers or biometric information develop and make publicly available a written policy regarding the retention and permanent destruction of biometric identifiers and biometric information. Biometric identifiers and biometric information must be permanently destroyed "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

35. BIPA further obligates any private entity that collects, captures, purchases, receives, or otherwise obtains a person's biometric identifiers or biometric information, must first 1) inform the person that biometric identifiers or biometric information are being collected; 2) inform the person of the specific purpose and length of time that the biometric identifiers or biometric information are collected, stored, and used; and 3) obtain written consent from the person to collect, capture, receive, store, and use the person's biometric identifiers or biometric information, 740 ILCS 14/15(b), and must store, transmit, and protect from disclosure the biometric identifiers or information in conformity with the reasonable standard of care for the industry, and in the same or more protected manner that it stores, transmits, and protects other confidential and sensitive information. 740 ILCS 14/15(e).

36. BIPA also prohibits private entities from selling, leasing, trading, or otherwise profiting from, 740 ILCS 14/15(c), and from disclosing, redisclosing, or otherwise disseminating a person's biometric identifiers or biometric information without obtaining informed, written consent from that person or their legally authorized representative. 740 ILCS 14/15(d)(1).

37.     To ensure compliance with BIPA, and in recognition of the sanctity and critical importance its citizens' biometric information, the Illinois General Assembly expressly authorized a private right of action for any person aggrieved by a violation of BIPA. For each violation, the prevailing party may recover 1) the greater of actual damages or $1,000 for negligent violations, 2) the greater of actual damages or $5,000 for intentional or reckless violations, 3) attorneys' fees and costs, and 4) injunctive relief. *See* 740 ILCS 14/20.

38.     The Illinois Legislature, in passing BIPA, clearly recognized the imperative of keeping biometric information safe and secure. Biometric information, unlike other personal identifiers such as a Social Security number, cannot be changed or replaced if hacked, stolen, or misused.

**B.      Subaru's DriverFocus System**

39.     Like most modern industries, the automotive industry has worked to actively incorporate biometric data and technology into advanced vehicle features, ranging from providing security to integrating customized features as part of the driver experience.[5] Driver monitoring technology was first introduced by Toyota in 2006 with infrared sensors that monitor the driver's alertness and eventually engage the brakes.[6] Since then, companies including Lexus, General Motors, BMW, and Ford have all implemented this type of biometric monitoring technology.

40.     Subaru first implemented driver recognition and monitoring technology that relies on vehicle occupants' biometric identifiers and/or biometric information during the 2019 Model

---

[5] *In-Car Biometric Technology For Human Interaction*, HYUNDAI MOTOR GROUP NEWSROOM, Oct. 30, 2020, https://news.hyundaimotorgroup.com/Article/In-Car-Biometric-Technology-For-Human-Interaction.
[6] *See e.g.*, *Toyota Enhances Pre-Crash Safety System with Driver-monitoring Function*, TOYOTA (Sept. 6, 2005), available at: https://global.toyota/en/detail/248128.

Year, when it introduced the DMS in Model Year 2019 Forester vehicles. Since then, Subaru has expanded the DMS to two additional vehicle lines: Outback and Legacy vehicles.

41.     DMS is a standard feature in MY2019-22 Forester Touring vehicles, as well as MY2020-22 Outback Touring, Touring XT, and Limited XT and Legacy Limited XT and Touring XT vehicles. DriverFocus is an available option on MY2020-22 Outback Limited and MY 2020-22 Legacy Limited vehicles.

42.     Subaru equips the DMS in Class Vehicles for the dual purpose of safety and convenience. The DriverFocus system tracks the driver's face and eyes to ensure that the driver is alert and focused on the road. Additionally, the DMS recognizes individuals to adjust the settings to the vehicle settings to the person's preferences.

43.      Class Vehicles are equipped with the DriverFocus system to "reduce distracted driving" and "give a helpful alert if a driver becomes distracted or drowsy."[7] The system uses a "near-infrared camera to focus on the driver's eyes and head positions."[8] The "near-infrared camera" tracks the driver's face and eyes to determine whether "the driver is not paying attention to the forward direction."[9] If the system determines that the driver is not paying attention or is drowsy, it will alert the driver with either a visual warning on the vehicle's display system or audible warnings, or both.

---

[7] *See e.g.*, *2022 Subaru Outback Features,* SUBARU
https://www.subaru.com/vehicles/outback/features.html (last visited Nov. 24, 2021).
[8] *See e.g.*, *EyeSight Driver Assist Technology Quick Guide, Legacy Outback Forester 2020*, p.19, available at:
https://techinfo.subaru.com/stis/doc/ownerManual/3918800_2020_EyeSight_Gen4_QG_1st.pdf
[9] *See 2020MY Outback Owner's Manual*, p.396, available at:
https://cdn.subarunet.com/stis/doc/ownerManual/MSA5M2003D-2004D_STIS-opt.pdf

44.     The DriverFocus system operates by scanning, capturing, and tracking the drivers' biometric identifiers and/or biometric information, including scanning the driver's eyes and face geometry. The system is based on facial recognition technology that Subaru patented.

45.     When a driver starts a Class Vehicle, the DMS automatically scans the face of the occupant of the driver's seat to detect the driver's biometrics, including but not limited to facial geometry, to identify facial features or landmarks of the individual and calculate a unique digital map of the driver's face based on various attributes of the driver's face. Indeed, the Class Vehicles' Owners Manuals acknowledge that the system utilizes "facial features" for DMS operation.

46.     The facial map constitutes a "biometric identifier." *See* 740 ILCS 14/10. Each facial map is unique and can be used to identify the particular individual.

47.     In addition to scanning drivers' facial features to determine if the driver is focused on the road, the DMS also stores and uses the biometric identifiers and/or biometric information to recognize specific individuals in order to adjust various vehicle features—such as the driver's position, climate control setting, side mirror position, and center information display settings—to the driver's pre-set preferences.

48.     The ability to recognize individual drivers is one of the critical functions of the DMS, which is carried out using biometric identifiers and/or biometric data.

49.     To become a registered driver, the system "collects and stores data regarding the driver's facial features."[10] When the driver enters the vehicle, the system will automatically scan the individual's face to determine if—based on a facial similarity score calculated by comparing the facial geometry of the recently scanned face to that of all facial scans stored in the vehicle's onboard computer—it matches registered facial feature data stored in the DMS. If the data

---

[10] *See e.g.*, 2020MY Outback Owner's Manual, p.398.

11

matches, the vehicle will recall the individual, adjust the vehicle to the pre-saved user settings, and display a welcome screen with the driver's name, all of which are "uniquely linked to [the individual]."[11]

50.     As alluded to above, Subaru has secured at least two patents related to the DMS: Patent 10592758 (application filed December 3, 2018, patent issued March 17, 2020) and Patent 10977505 (application filed December 3, 2018, patent issued August 1, 2021). These patents describe both how the DMS system operates and the extent to which it relies on and utilizes the biometric identifiers and/or biometric data it collects without first securing informed written consent.

51.     For example, Patent 10977505 is a patent that Subaru obtained concerning technology for a vehicle "occupant monitoring device." In the patent, Subaru describes technology that uses an infrared "in-vehicle camera" to "capture the head of the driver" and other vehicle occupants, which then creates and records "face data . . . obtained by capturing the faces" of vehicle occupants.

52.     The "individual recognizer" then compares the captured "face data" of the driver and/or occupants to "face data registered in the individual database" by using "similarity levels" calculated using biometric identifiers and/or biometric data to determine if the scanned individuals are registered occupants. All necessary data is stored on the database, which is located in Class Vehicles' onboard computers.

53.     In addition to capturing the head of the driver and occupants to recognize individuals, the technology described in Patent 10977505 also "monitors the recognized occupant

---

[11] *See e.g.*, *EyeSight Driver Assist Technology Quick Guide, Legacy Outback Forester 2020*, p.25.

for inattentive driving and/or drowsy driving." If the system detects that the driver in inattentive or drowsy, it will give an audible warning to the driver.

54.     Accordingly, the driver recognition system and its related features cannot operate without first collecting each user's biometric identifiers. While a driver can manually turn off DriverFocus, the system defaults to "On" each time that the vehicle's ignition is restarted. Further, even if the driver disables the driver recognition system after restarting the vehicle, the inattentive/drowsy driver feature cannot be disabled. As such, an individual cannot entirely prevent or avoid the Class Vehicle from scanning their biometric identifiers and/or biometric information.

55.     And because Class Vehicles collect and store users' biometric data on an onboard computer, Subaru can access this highly sensitive information if it so chooses, just as it does with myriad other vehicle data stored thereon.

56.     Through its proprietary Starlink system, Subaru accesses and transmits to itself an abundance of vehicle-specific data maintained and stored on the same onboard computer system on which Plaintiff's and Class members' sensitive biometric identifiers and/or biometric data are stored. The Starlink system collects and transmits, *inter alia*: mechanical conditions or incidents involving the vehicle, such as crash severity sensor data; vehicle time, speed and location; vehicle-occupants' search content; data relating to any phone calls made through the system; and other vehicle performance data.

57.     The Starlink system—which automatically monitors, records and transmits to Subaru data regarding vehicle operations, driving activity, and sensing or diagnostic modules—also interfaces directly with the DriverFocus system. For example, if a driver does not respond to the inattentive or drowsy driver warnings, the DriverFocus system may send data through the Starlink system to alert Subaru of an accident. Subaru acknowledges that it collects and retains

information and data through the Starlink system, but does not inform drivers that Subaru can collect and/or access their biometric data.

58.     Prior to scanning a driver's biometric identifiers and/or biometric information, Subaru fails to inform Class Vehicle owners that the DMS captures, collects, and stores their biometric identifiers and/or information; or the purpose or length of time that their biometric identifiers and/or biometric information will be collected, stored, and used. Moreover, Subaru does not obtain a written executed release from the driver that Subaru will scan, collect or use the driver's biometric identifiers and/or biometric information, providing no opportunity for Class Vehicle owners to "opt out" of having their biometric data captured, collected, and stored.

## CLASS ALLEGATIONS

59.     Plaintiff brings this action, individually, and on behalf of a class of similarly situated Illinois residents, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), defined as follows:

> All persons in the State of Illinois who are current or former owners of Class Vehicles.

60.     Excluded from the Class(es) are: (a) Defendant; (b) Defendant's affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

61.     Plaintiff reserves the right to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified.

62.     Numerosity: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Subaru and obtainable by Plaintiff only through the discovery process, Plaintiff believes, and on that basis

alleges, that the Class consists of thousands of people. The members of the Class will be identifiable through information and records in Subaru's possession, custody, and control.

63. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a. Whether Defendant collects, captures, or otherwise obtains Plaintiff's and Class members' biometric identifies or biometric information;

b. Whether Defendant informs Plaintiff and Class members that it captures, collects, or otherwise obtains their biometric identifiers or biometric information;

c. Whether Defendant implemented and made public a written policy regarding the collection, retention, and permanent destruction of Plaintiff's and Class members' biometric identifiers and biometric information;

d. Whether Defendant informs Plaintiff and Class members of the specific purpose and length of time that their biometric identifiers or biometric information is collected, used, or stored;

e. Whether Defendant obtained a written executed release from Plaintiff and Class members to collect, capture, or otherwise use their biometric identifiers or biometric information;

f. Whether Defendant intentionally or recklessly violated the provisions of BIPA; and

g. Whether Plaintiff and Class members are entitled to injunctive relief to enjoin Defendant's violations of BIPA.

64. <u>Typicality</u>: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out the uniform conduct of Subaru's failure to obtain informed consent from current and former owners of Class Vehicles to collect, capture,

15

obtain and use their biometric identifiers and/or biometric information. Plaintiff and the members of the Class were harmed as a result of Defendant's uniform wrongful conduct.

65.     Adequacy: Plaintiff is an adequate representative because her interests do not materially or irreconcilably conflict with the interests of the Class she seeks to represent, she has retained counsel competent and highly experienced in complex class action litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the Class. Neither Plaintiff nor her counsel have any interests that are antagonistic to the interests of other members of the Class.

66.     Superiority: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendant's records and databases.

67.     Certification is also appropriate because, given the large number of Class members, allowing individual actions to proceed in lieu of a class action would run the risk of yielding

inconsistent and conflicting adjudications. Certification of a class is a convenient and economical means for disposing of all claims based on the legal and factual issues raised in this complaint.

68.     Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violations of the Illinois Biometric Information Privacy Act**
**740 ILCS 14/1, *et seq.***

69.     Plaintiff realleges and incorporates by reference all paragraphs as through fully set forth herein.

70.     Subaru is a "private entity" under BIPA. 740 ILCS 14/10.

71.     Plaintiff is an individual who had her "biometric identifiers" and/or "biometric information" collected by Subaru. 740 ILCS 14/10.

72.     Defendant collected, captured, or otherwise obtained Plaintiff's and Class members' biometric identifiers and/or biometric information through the DriverFocus/DMS equipped in the Class Vehicles.

73.     Plaintiff's biometric identifiers were used to identify her and, therefore, constitutes "biometric information" as defined by BIPA. 740 ILCS 14/10.

74.     Defendant failed and continues to fail to implement and make publicly available a written policy regarding a retention schedule and guidelines for the permanent destruction of Plaintiff's and Class members' biometric identifiers or biometric information. 740 ILCS 14/15(a).

75.     Defendant failed and continues to fail to inform Plaintiff and Class members in writing that Plaintiff's and Class members' biometric identifiers and biometric information are being collected or stored. 740 ILCS 14/15(b)(1).

76.     Defendant failed and continues to fail to inform Plaintiff, Class members of the specific purpose and length of time that Plaintiff's and Class members' biometric identifiers and biometric information are being collected, store, and used. 740 ILCS 14/15(b)(2).

77.     Defendant failed and continues to fail to obtain a written executed release from Plaintiff and Class members to collect Plaintiff's and Class members' biometric identifiers and biometric information. 740 ILCS 14/15(b)(3).

78.     On information and belief, Defendant intentionally and/or recklessly violated the provisions of BIPA.

79.     As a direct and proximate result of the foregoing, Plaintiff and Class members suffered and will continue to suffer damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf the Class, respectfully requests that the Court:

A.     Certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiff is a proper class representative; and appoint Plaintiff's Counsel as Class Counsel;

B.     Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

C.     Award pre-judgment and post-judgment interest on such monetary relief;

D.     Grant appropriate injunctive relief including, without limitation, an order that requires Defendant to refrain from capturing, collecting, using, storing, disclosing, or disseminating Plaintiff's and Class members' biometric identifiers or biometric information without obtaining their express written consent, and permanently destroying Plaintiff's and Class members' biometric identifiers and biometric information;

E.     Award reasonable attorney's fees and costs; and

F.     Grant such further relief that this Court deems appropriate.

18

Dated: February 10, 2022                    By:    *s/ Daniel O. Herrera*
                                                   Daniel O. Herrera
                                                   Nickolas J. Hagman
                                                   **CAFFERTY CLOBES MERIWETHER
                                                   & SPRENGEL LLP**
                                                   135 S. LaSalle Street, Suite 3210
                                                   Chicago, Illinois 60603
                                                   Phone: (312) 782-4880
                                                   Facsimile: (312) 782-4485
                                                   Email: dherrera@caffertyclobes.com
                                                           nhagman@caffertyclobes.com

                                                   *Attorneys for Plaintiff and the Class*

<u>**CERTIFICATE OF SERVICE**</u>

I, Daniel O. Herrera, an attorney, hereby certify that on February 10, 2022, service of the foregoing ***First Amended Class Action Complaint*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

<u>*s/   Daniel O. Herrera*                          </u>
Daniel O. Herrera