UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RENEE GIRON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 22-cv-75 |
| v. ) | |
| ) | Judge Jorge L. Alonso |
| SUBARU OF AMERICA, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Concerned that her automobile's driver-attention-tracking feature was capturing her biometric data, plaintiff Renee Giron ("Giron") filed in the Circuit Court of Cook County a complaint in which she asserted a claim under the Biometric Information Privacy Act ("BIPA"). Because plaintiff's complaint was a purported class action, defendant Subaru of America, Inc. removed the case pursuant to the Class Action Fairness Act.[1] Defendant moves to compel arbitration. For the reasons set forth below, the Court denies the motion to compel arbitration.

**I.  Background**

In or about January 2020, plaintiff purchased a 2020 Subaru Outback. Rather than paying for her vehicle with cash, plaintiff signed a financing agreement (the "Financing Agreement") with Grand Subaru, LLC, from whom she purchased the vehicle. That Financing Agreement states, in relevant part:

---

[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). Defendant Subaru of America, Inc. is a citizen of New Jersey, its state of incorporation and the location of its principal place of business. [Docket 1 at ¶ 15]. Plaintiff Giron is a citizen of Illinois. [Docket 1 at ¶ 17]. The purported class contains more than 100 members. [Docket 1 at ¶ 12]. The amount in controversy exceeds $5,000,000.00. [Docket 1 at ¶ 22].

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit for the deferred payment price under the agreements in this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. Funds according to the payment Schedule below. . . .

* * *

**APPLICABLE LAW**

Federal law and the law of the state of Illinois apply to this contract.
* * *
**ARBITRATION PROVISION**

PLEASE REVIEW—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS

**1. EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

**2. IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

**3. DISCOVERY AND OTHER RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action. You expressly waive any right you may have to arbitrate a class action. . . .

(Financing Agreement at 1, 5/Docket 19-2 at 2, 7).

About two years later, plaintiff filed suit. In her complaint, plaintiff alleges that the Subaru vehicle she purchased is equipped with a safety feature that uses a camera to track a driver's face and eyes in order to determine whether the driver is paying attention to the road. Plaintiff alleges that if the "system determines that the driver is not paying attention or is drowsy," then the system will alert the driver with a visual or audible warning. (Complt. ¶ 2). Plaintiff alleges the safety system can and does collect and store drivers' (including plaintiff's) biometric information. Plaintiff also alleges that the safety system offers a convenience feature as well. Specifically, plaintiff alleges that when a driver starts the vehicle, the system scans the driver's face and, if it recognizes the driver, adjusts the seat and mirrors to the driver's preferences. Plaintiff alleges that the reason the system can identify drivers is that the system makes a facial map of each driver. Plaintiff alleges that the facial map constitutes biometric information for purposes of BIPA. Based on these allegations, plaintiff asserts that defendant has violated BIPA.

Defendant has filed a motion to compel arbitration.

## II. Discussion

"The Federal Arbitration Act requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1415 (2019) (citing 9 U.S.C. § 2). It "was originally enacted, 'to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts.'" *Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc.*, 660 F.3d 988, 994 (7th Cir. 2011). To compel arbitration, "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing

3

party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The burden is on the party seeking to compel arbitration to show arbitration is the appropriate venue. *See A.D. v. Credit One Bank, NA*, 885 F.3d 1054, 1063 (7th Cir. 2018) ("[A]s the party seeking to compel arbitration, [defendant] had the burden of showing that [plaintiff] was bound by the cardholder agreement.").

A court "cannot compel a party to arbitrate a dispute unless that party has agreed to do so." *Warciak v. Subway Restaurants, Inc.*, 880 F.3d 870, 872 (7th Cir. 2018). In this case, defendant Subaru of America, Inc. is attempting to enforce an arbitration clause in an agreement to which it is not a party. "A nonsignatory to a contract typically has no right to invoke an arbitration provision contained in that contract." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021). Still, the Supreme Court has held that "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] *if the relevant state contract law* allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009) (emphasis added); *see also Sosa*, 8 F.4th at 637 ("A non-party's right to enforce an arbitration agreement is governed by state law."); *Warciak*, 880 F.3d at 872. In other words, defendant's burden is to show that Illinois law allows it to enforce the arbitration clause in the Financing Agreement to which it is not a party.

Before the Court considers the question of whether Illinois law allows Subaru of America, Inc. to enforce the arbitration provision in the Financing Agreement between plaintiff and Grand Subaru, LLC, the Court must first consider Subaru of America, Inc.'s argument that the issue should be decided by the arbitrator. It is true, as Subaru of America, Inc. points out, that the Supreme Court "has consistently held that parties may delegate threshold arbitrability questions to the arbitrator, *so long as the parties' agreement does so by 'clear and unmistakable'*

4

*evidence.'" Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S.Ct. 524, 530 (2019) (emphasis added). The Supreme Court also noted that "[b]efore referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein*, 139 S.Ct. at 530 (citing 9 U.S.C. § 2).

> Plaintiff's Financing Agreement with Grand Subaru, Inc. states:
>
> *Any claim or dispute*, whether in contract, tort, statute or otherwise (*including* the interpretation and scope of this Arbitration Provision, and *the arbitrability* of the claim or dispute), *between you and us or our employees, agents, successors or assigns*, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Financing Agreement at 5/Docket 19-2 at 7). It is true that the arbitration provision applies to "the arbitrability of the claim or dispute," but the arbitration provision is further limited. The arbitration provision describes the types of claims or disputes that may (at either signatory's election) be resolved by arbitration. To be a claim or dispute that may be resolved by arbitration, that claim or dispute must be: (1) "between you and us," i.e., between plaintiff and Grand Subaru, LLC; **and** (2) "arise[] out of or relate[] to" one or more of the listed categories (i.e., "credit application," "condition of this vehicle", "any resulting transaction or relationship (including any such relationship with third parties"). Subaru of America, Inc.'s argument would write out of the agreement the language that says the claims subject to arbitration are those "between you and us," i.e., between plaintiff and Grand Subaru, LLC. Although there is clear evidence that plaintiff has agreed to refer to an arbitrator the question of arbitrability with respect to claims between plaintiff and Grand Subaru, LLC, there is no evidence (let alone clear and unmistakable evidence) that plaintiff has agreed to refer to an arbitrator the question of arbitrability between plaintiff and Subaru of America, Inc.

5

The Court cannot say these parties (plaintiff and Subaru of America, Inc.) agreed to refer issues of arbitrability to an arbitrator any more than it could say a person who signed an arbitration agreement with Target must refer to an arbitrator the question of whether it must arbitrate disputes with Walmart. The Court must first determine whether an agreement between plaintiff and Subaru of America, Inc. exists. *Cf. K.F.C. v. Snap Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("Even the most sweeping delegation cannot send the contract-formation issue to the arbitrator, because until the court rules that a contract exists, there is simply no agreement to arbitrate. . . . [T]he breadth of delegation is irrelevant if the parties did not enter into a contract"). People and entities sign arbitration agreements all the time. By doing so, they are not agreeing that any other third party in this nation can force them to an arbitrator to determine whether they have agreed to arbitrate a dispute with the third party. The question of whether Subaru of America, Inc. can enforce the arbitration provision in a contract to which it is not a party is not different from the question of whether an agreement to arbitrate exists between the plaintiff and Subaru of America, Inc. Thus, the question of whether a third party may enforce an arbitration clause in a contract to which it is not a party is a question for the Court.

While defendant was preparing its opening brief, this conclusion (that the question of whether a third party may enforce an arbitration provision is a question for the court, not an arbitrator) was open to debate. *See Newman v. Plains All Am. Pipeline, L.P.*, 23 F.4th 393, 398 (5th Cir. 2022) ("[W]e must decide whether Plains can enforce the Newman-Cypress arbitration agreement; not an arbitrator. ... When a court decides whether an arbitration agreement exists, it necessarily decides its enforceability between parties. Therefore, deciding an arbitration agreement's enforceability between parties remains a question for courts."); *CCC Information Services, Inc. v. Tractable Inc.*, Case No. 18 C 7246, 2019 WL 2011092 at *2 (N.D. Ill. May 7,

2019) ("Because arbitration is a matter of contract, 'the court must decide whether a contract exists before it decides whether to stay an action and order arbitration. There is no dispute that plaintiff and JA Appraisal are bound by the license agreement's arbitration clause. The dispute is whether plaintiff and Tractable are bound. And that dispute—whether plaintiff agreed to arbitrate with Tractable—is a dispute that 'can't logically be resolved by the arbitrators.' Although the arbitration clause delegates the issues of existence and validity to the arbitrator, the delegation clause cannot be enforced against plaintiff unless plaintiff agreed to arbitrate disputes.") (internal citations omitted); *but see Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021).

Before defendant filed its reply brief, however, the Seventh Circuit affirmed the district court's decision in *CCC*. *CCC Intelligent Solutions, Inc. v. Tractable Inc.*, 36 F.4th 721 (7th Cir. 2022). The Seventh Circuit did not hold that an arbitrator must decide the question of whether Tractable could enforce the arbitration clause in the contract between plaintiff and JA Appraisal. Instead, the Seventh Circuit said:

> The exception for third-party beneficiaries does not apply, which leaves the dominant rule. Tractable is not a party to this contract, so it cannot demand arbitration.

*CCC*, 36 F.4th at 724.[2] The Seventh Circuit decided whether Tractable could compel arbitration; it did not refer the decision to the arbitrator.

---

[2] The firm representing defendant in this case represented one of the parties in *CCC* at the Seventh Circuit, so one might have expected defense counsel to know about the case by the time it filed its reply. (The decision was issued the day before defendant filed its motion to compel.) This is not the only example of defendant's failure to inform the Court of binding precedent. Defendant also insisted that "Federal law applies in determining whether Plaintiff is equitably estopped from arbitrating her claims." (Def. Reply at 5/Docket 27 at 6). Not only is this incorrect, but it flies in the face of more than a decade of Supreme Court and Seventh Circuit precedent. Ignoring binding precedent is not the way to build credibility with the Court.

Accordingly, it is for this Court (not an arbitrator) to consider whether Illinois law allows Subaru of America, Inc. to enforce the arbitration provision in the Financing Agreement between Grand Subaru, LLC and plaintiff. When applying state law, this Court's task is to "determine how the state's highest court would rule." *In re Zimmer, NextGen Knee Implant Products Liability Lit'n.*, 884 F.3d 746, 751 (7th Cir. 2018) (quoting *Rodas v. Seidlin*, 656 F.3d 610, 626 (7th Cir. 2011)).

Under Illinois law, a "nonsignatory typically has no right to invoke an arbitration provision contained in that contract." *Sosa*, 8 F.4th at 639 (applying Illinois law).[3] Subaru of America, Inc. argues that it is entitled to enforce the arbitration provision in the Financing Agreement between plaintiff and Grand Subaru, LLC, due to equitable estoppel. Under Illinois law, as the Seventh Circuit has explained:

> 'A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person. *Ervin* [*v. Nokia, Inc.*], 285 Ill.Dec. 714, 812 N.E.2d [534] at 541, [349 Ill.App.3d 508] (2004). The party bringing an equitable claim 'must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable.' *Id*. 'The party claiming [equitable] estoppel has the burden of proving it by clear and convincing evidence.' *In re Scarlett Z-D*, 390 Ill.Dec. 123, 28 N.E.3d 776, 785 (2015).

---

[3] In a footnote, defendant argues that it is a third-party beneficiary to the Financing Agreement, because the Financing Agreement includes the words "third parties." The Court disagrees. Under Illinois law, there is a "strong presumption against conferring contractual benefits on noncontracting third parties" absent a showing "so strong as to be practically an express declaration." *Sosa*, 8 F.4th at 639 (applying Illinois law). As the Court has already explained, the arbitration clause says disputes "between" Grand Subaru, LLC and plaintiff may be arbitrated even if they "arise" out of a relationship with third parties. It does not say the Financing Agreement was made for the direct benefit of Subaru of America, Inc., and it does not say disputes between plaintiff and third parties must be arbitrated.

*Sosa*, 8 F.4th at 641.[4]

In *Sosa* and *Ervin*, each court rejected a third party's argument that the third party could enforce an arbitration clause in a contract to which the third party was not a signatory. In *Ervin*, the Fifth District concluded:

> When Ervin entered into the [agreement] with AT&T for cell phone service in July of 2000, he took no action from which Nokia could have reasonably relied on to its detriment that Ervin had agreed to arbitrate any claim he had against Nokia.

*Ervin*, 812 N.E.2d at 515. In *Sosa*, the Seventh Circuit explained:

> Onfido identified no representation that Sosa made to Onfido under the Terms of Service, or otherwise, to induce Onfido to rely on the contract's arbitration provision. . . . Further, Onfido failed to present any evidence of its detrimental reliance on any such representation as required by Illinois law.

*Sosa*, 8 F.4th at 641.

This case is similar. Subaru of America, Inc. has put forth no evidence, let alone clear and convincing evidence, that plaintiff made any representation to induce Subaru of America, Inc. to rely, to its detriment, on the arbitration clause. Nor has Subaru of America, Inc. put forth any evidence of detrimental reliance. The closest Subaru of America, Inc. comes is to argue:

> On the Retail Contract Worksheet, a document that 'must be included/attached to every retail contract,' Ex. A-2 at 1, Plaintiff financed her vehicle at the 'SMF Special Super Low Rate,' through Chase under the tradename Subaru Motor Finance. *Id.* [Subaru of America, Inc.] also agreed to 'accept[]' Plaintiff's enrollment and 'issue' the Subaru Added Security Maintenance Plan to Plaintiff. Ex. A-3 at 1. Plaintiff plainly benefits from the Security Maintenance Plan and favorable financing.

---

[4] Defendant also argues for a different standard of estoppel, and the Court rejects the argument. Not only has defendant failed to give this Court any reason to believe the Illinois Supreme Court would adopt such an alternative standard, but the Seventh Circuit has explicitly rejected a party's argument that the Illinois Supreme Court would adopt the alternative standard. *Sosa*, 8 F.4th at 641-42.

(Def. Brief at 16/Docket 20 at 23). Subaru of America, Inc. seems to be suggesting that it made a decision to provide plaintiff with an Added Security Maintenance Plan and that that decision constitutes detrimental reliance. Perhaps that counts as a detriment, but in reliance on what representation by plaintiff? Subaru of America, Inc. does not say. Subaru of America, Inc. seems to be saying it provided the Added Security Maintenance Plan because of the Retail Contract Worksheet. That document, which Subaru of America, Inc. attached to its motion, says nothing about arbitrating claims. Worse, there is no evidence that suggests the document is a representation by plaintiff. The document says, "Retailer Use Only," which suggests it was a document filled out by the vehicle seller (Grand Subaru, LLC), not the plaintiff. [Docket 19-3 at 2]. The document also includes a copyright notice of "2017 JPMorgan Chase Bank, N.A." and says, "This does not restrict your ability to mark up the rate (where permitted)." [Docket 19-3 at 2]. That language suggests the document was filled out by the vehicle seller to be given to JP Morgan Chase Bank, which, one suspects, likely loaned Grand Subaru, LLC the money it loaned plaintiff. In short, Subaru of America, Inc. has put forth no evidence of any representation by plaintiff that would have induced Subaru of America, Inc. to rely on the arbitration provision. Nor has it produced evidence of detrimental reliance on such a statement.

      Subaru of America, Inc. has not shown it is allowed, under Illinois law, to enforce the arbitration clause in the Financing Agreement between plaintiff and Grand Subaru, LLC. Accordingly, its motion to compel arbitration is denied.

### III. Conclusion

For the reasons set forth above, the Court denies the motion [19] to compel arbitration.

This case is set for status on December 8, 2022, at 9:30 a.m.

SO ORDERED.                                    ENTERED:  November 21, 2022

_____
JORGE L. ALONSO
United States District Judge